UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JACK DEMPSAY,

    Plaintiff,

v.                                                                  Case No: 5:24-cv-176-JSM-PRL

LEXISNEXIS RISK SOLUTIONS,
INC. and SAGESTREAM, LLC,

    Defendants.

## Order

    Plaintiff Jack Dempsay ("Plaintiff") brought this action against Defendants LexisNexis Risk Solutions, Inc. ("LexisNexis Risk") and SageStream, LLC ("SageStream") for purported violations of the Fair Credit Reporting Act ("FCRA") based on the contention that a consumer reporting agency inaccurately reported him as deceased to Synchrony Bank. Before the Court is Plaintiff's motion to compel LexisNexis Risk to produce documents and complete discovery responses. (Doc. 31). In opposition, LexisNexis Risk argues that based on their involvement in preparing the communication at issue with Synchrony Bank and production to date, their responses are complete and that further information would be irrelevant. (Doc. 32). In reply, Plaintiff contends that LexisNexis Risk was involved in preparing a consumer report indicating Plaintiff was deceased based on a letter he received from Synchrony Bank denying his credit application. (Doc. 35). For the reasons set forth below, Plaintiff's motion to compel is due to be denied.

    Plaintiff alleges that LexisNexis Risk violated the FCRA when it incorrectly reported him as "deceased" in a consumer report sent to Synchrony Bank in October 2023. (Doc. 25

at ¶¶ 11-12, 51-59, 92-104). Plaintiff alleges that, as a result of LexisNexis Risk's inaccurate reporting, he failed to obtain the credit needed to pay for oral surgery performed by a competent oral surgeon. (*Id.* at ¶¶ 70-87, 93, 97, 103).

LexisNexis Risk has disputed its involvement in the transactions and events at issue from the outset. It has identified SageStream, LLC ("SageStream"), a wholly owned subsidiary of LexisNexis Risk, as the consumer reporting agency that communicated with Synchrony Bank in October 2023 that there were records indicating Plaintiff was deceased.

Plaintiff has not heeded LexisNexis Risk's assertions. For example, in August 2024, rather than substituting SageStream for LexisNexis Risk as a defendant, Plaintiff moved to amend his complaint to add SageStream as a defendant to the action. (Doc. 20). Plaintiff's amended complaint also asserted new allegations against LexisNexis Risk, claiming that it participated in SageStream's preparation of consumer reports by "communicat[ing] information to SageStream on whether a consumer is deceased." (Doc. 20-1 at ¶ 48; Doc. 20-2 at ¶ 48; Doc. 25 at ¶ 48).

Meanwhile, during discovery, Plaintiff served his first set of discovery requests on LexisNexis Risk. (Doc. 31-1; Doc. 31-3). LexisNexis Risk served Plaintiff its responses, which included a preliminary statement and general objections, stating (again) that it was not a proper defendant to the action because "Synchrony Bank did not obtain a 'consumer report' on Plaintiff from defendant LexisNexis Risk," but rather "Synchrony Bank obtained a report instead from SageStream, LLC, a company separate from defendant LexisNexis Risk." (Doc. 31-1 at pp. 3-4). In its discovery responses, LexisNexis Risk therefore objected to requests relating to its role or involvement in preparing the alleged communication to Synchrony Bank on the grounds that such requests were irrelevant since it did not prepare a consumer report

indicating Plaintiff was deceased, did not report Plaintiff as deceased, and did not provide or furnish a consumer report about Plaintiff with a deceased indicator to Synchrony Bank. (Doc. 31-1 at pp. 12, 18-19; Doc. 31-3 at pp. 8-9, 15-16, 18-22). Having found their responses to be generally incomplete and unresponsive, and after failed attempts to resolve the disputed discovery requests, Plaintiff then moved to compel the production of certain documents and information from LexisNexis Risk. (Doc. 31).

Specifically, Plaintiff seeks to compel LexisNexis Risk to provide full and complete responses to Interrogatory Nos. 6 and 13 and produce documents to Request for Production Nos. 9, 17, 20, 22-26. (*Id.* at pp. 9-23). Interrogatory Nos. 6 and 13 seek the identities of LexisNexis Risk employees familiar with its policies and procedures pertaining to FCRA compliance and reporting of deceased consumers; Request for Production No. 9 seeks documents related to LexisNexis Risk's purchase and use of the Death Master File from the Social Security Administration (e.g., contracts); Request for Production No. 17 seeks documents describing LexisNexis Risk's maintenance of consumer information and generation of consumer reports specifically relating to Plaintiff's credit reports and/or credit file; Request for Production No. 20 seeks communications between LexisNexis Risk and any source regarding the deceased notation reported to Plaintiff's credit file during the last five years; Request for Production No. 25 seeks documents identifying LexisNexis Risk employees responsible for FCRA compliance, such as training, procedures, and policies (e.g., flow charts or organizational charts); and Request for Production Nos. 22, 23, 24, and 26 seek policies and procedures pertaining to LexisNexis Risk's FCRA compliance and its handling of consumer information. (Doc. 31-1 at pp. 12, 18; Doc. 31-3 at pp. 8-9, 15, 18-21).

Motions to compel discovery under Rule 37(a) of the Federal Rules of Civil Procedure

are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984) (per curiam). Under Rule 26(b)(1), parties are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The moving party "bears the initial burden of proving that the information sought is relevant." *Douglas v. Kohl's Dep't Stores, Inc.*, No. 615CV1185ORL22TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quoting *Moore v. Lender Processing Servs. Inc.*, No. 3:12-CV-205-J, 2013 WL 2447948, at *2 (M.D. Fla. June 5, 2013)). "Relevancy is determined based on the 'tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action.'" *Garcia v. Padilla*, No. 2:15-CV-735-FTM-29CM, 2016 WL 881143, at *2 (M.D. Fla. Mar. 8, 2016) (quoting Fed. R. Evid. 401). Motions to compel must be denied if the movant fails to meet their initial burden. *See Douglas*, 2016 WL 1637277, at *4.

Given a review of the record and the representations made by LexisNexis Risk's counsel, James McCabe, in response to the motion to compel, there can be no dispute that LexisNexis Risk produced all documents and/or information it has in its possession, custody, and control relevant to its respective role and involvement in the transactions and events at issue. LexisNexis Risk has made clear that certain documents and information sought relating to its communication with Synchrony Bank is irrelevant because it did not prepare a consumer report indicating Plaintiff was deceased and did not furnish a consumer report about Plaintiff with a deceased indicator to Synchrony Bank and, as a result, it is unable to produce documents or information responsive to such requests. These claims are supported by the

evidence provided in LexisNexis Risk's opposition, which includes a declaration signed by Mr. McCabe under the penalty of perjury.

The evidence demonstrates that LexisNexis Risk was not the consumer reporting agency responsible for preparing a report on Plaintiff indicating he was deceased or communicating with Synchrony Bank that Plaintiff was deceased. In his declaration, Mr. McCabe indicates that Plaintiff did not provide his correct social security number when he applied for credit with Synchrony Bank and instead submitted the social security number of a deceased person. (Doc. 32-1 at ¶ 4). Mr. McCabe came to this conclusion by reviewing the "October 11, 2023 input and output communications between SageStream and Synchrony, which reflected the input of the wrong social security number for Plaintiff . . . and SageStream's responses, which included the (232) code indicating the Plaintiff was deceased." (*Id*. at ¶ 10). Mr. McCabe is informed that when SageStream receives inquiries to obtain credit scores, it compares the social security number inputted in the inquiry to a list prepared by the Social Security Administration called the "Death Master File," which consists of about 110 million social security numbers associated with deceased individuals. (*Id*. at ¶ 5). In this case, in response to Synchrony Bank's inquiries on the Plaintiff, Mr. McCabe found that SageStream returned an exception or reason code of "232," signifying that "[c]onsumer reported as deceased[,]" which meant that the inputted social security number matched with a social security number of a deceased person listed on the Death Master File. (*Id*. at ¶ 6).

To that end, Mr. McCabe emailed Plaintiff's counsel indicating that the "report at issue in this case (Synchrony deceased report) was not prepared by named defendant LexisNexis Risk." (*Id*. at ¶ 10; *see* Doc. 32-3). He explained to Plaintiff's counsel how to read and understand the input and output communications between SageStream and Synchrony

Bank in an effort to demonstrate that LexisNexis Risk did not play any role in preparing the alleged communication to Synchrony Bank. (*See* Doc. 32-1 at ¶ 10; Doc. 32-3).

Plaintiff nevertheless argues that LexisNexis Risk is a proper defendant in this action because, according to a letter he received from Synchrony Bank denying his credit application, it identified LexisNexis Risk (along with SageStream) as the consumer reporting agency responsible for reporting him as deceased. (Doc. 31 at pp. 10-12; *see* Doc. 31-2). While Synchrony Bank specifically identified "SageStream / LexisNexis Risk Solutions" as the agency that reported Plaintiff as deceased, it did not indicate that it obtained such information from both SageStream *and* LexisNexis Risk in its letter. (Doc. 31-2 at p. 2) (emphasis added). Further, the letter advised Plaintiff that "[i]f more than one agency is disclosed[,] the reason(s) shown [i.e., applicant is deceased] are based on the report *provided by the first listed agency*." (*Id.*) (emphasis added). Synchrony Bank listed SageStream as the first agency in the letter, and thus, it is evident that SageStream is the agency that reported Plaintiff as deceased to Synchrony Bank.

Next, Plaintiff argues that LexisNexis Risk should produce certain information related to its participation with SageStream in preparing consumer reports on deceased consumers. (Doc. 31 at p. 12). However, LexisNexis Risk makes clear that it did not provide SageStream with any information (including the Death Master File) indicating Plaintiff was deceased. (Doc. 32 at p. 13). To the extent that information or documentation pertaining to the Death Master File would be relevant to Plaintiff for purposes of understanding the consumer reporting process or identifying the proper agency(s) that had access or use to it during the period of question in time, Mr. McCabe's declaration explains that LexisNexis Risk Data

Management, LLC (a different entity than LexisNexis Risk Solutions, Inc.) provided SageStream with a copy of the Death Master File. (Doc. 32-1 at ¶ 17).

Furthermore, by way of example, Plaintiff takes issue with LexisNexis Risk's response to Request for Production No. 20 (which seeks communications between LexisNexis Risk and any source regarding the deceased notation reported to Plaintiff's credit file during the last five years), stating that it "has no documents responsive to this Request." (Doc. 31 at p. 20). However, "[t]he Court cannot compel production of documents that do not exist." *EMP Indus., Inc. v. KECO Inc.*, No. 8:17-CV-869-T-02JSS, 2018 WL 7494607, at *2 (M.D. Fla. Nov. 28, 2018). LexisNexis Risk's response to Request for Production No. 20 is complete, confirming that it had no documents responsive to Plaintiff's request and thus had nothing to serve. Indeed, LexisNexis Risk has made a good faith effort to comply with Plaintiff's requests and even offered to meet and confer with Plaintiff's counsel regarding how relevant and proportional information may be conveyed to Plaintiff by other means.

Despite their assertions, now supported by a declaration, that SageStream communicated with Synchrony Bank that there were records indicating Plaintiff was deceased and that LexisNexis Risk's involvement in the transactions and events at issue was non-existent, LexisNexis Risk has produced documents and/or provided responses responsive to Plaintiff's discovery requests. To the extent they did not, their objections are well taken and sustained.

As a final matter, LexisNexis Risk requests attorney's fees and costs in defending Plaintiff's motion to compel. (Doc. 32 at pp. 18-20). If a court denies a motion to compel, it must award the prevailing party reasonable expenses, including attorney's fees, incurred in opposing the motion unless "the motion was substantially justified or other circumstances

make an award of expenses unjust." *See* Fed. R. Civ. P. 37(a)(5)(B). Although Plaintiff did not prevail in this matter, the Court finds that Plaintiff's motion was substantially justified, as "reasonable people could differ" on the sufficiency of LexisNexis Risk's discovery responses. *See LaFavors v. Thayer*, 706 F. App'x 489, 491 (11th Cir. 2017). Therefore, LexisNexis Risk's request for attorney's fees and costs is denied.

Accordingly, Plaintiff's motion to compel discovery (Doc. 31) is **DENIED without prejudice**.

**DONE** and **ORDERED** in Ocala, Florida on December 9, 2024.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties